PER CURIAM.
We have for review the uncontested report of the Florida Judicial Qualifications Commission (Commission) recommending that Judge James S. Byrd, Circuit Judge of the Ninth Judicial Circuit, be given a public reprimand. We have jurisdiction. Art. V, § 12, Fla. Const.
On October 24, 1986, the Commission filed formal charges against Judge Byrd, alleging that while a member of The Florida Bar he had:
1.On or about November 29, 1982, improperly paid ad valorem taxes on real estate personally owned with funds belonging to the Estate of Bessie Yeargin.
2. On or about October 5, 1982, deposited the sum of $811.46 which belonged to the Estate of Bessie Year-gin into an account in which he had a proprietary interest.
3. On or about May 10, 1983, misappropriated and converted $5,491.75 to his personal use and benefit.
The formal charges were later amended to add an allegation that in or about November, 1981, while an attorney, Judge Byrd wrongfully pledged a $30,000 certificate of deposit which he held as trustee for Virginia Keiffer to the Flagship Bank of Seminole, as collateral for one or more personal loans and that this certificate of deposit remained in the custody of Flagship Bank of Seminole until approximately May 20, 1984, when the last of these loans was satisfied. Judge Byrd filed an answer and amended answer basically admitting the transactions but denying that the admitted transactions constituted unlawfulness, conversion or misappropriation. At the February 26, 1987 hearing on this matter, Judge Byrd testified at length concerning the “chaotic climate” in which these transactions were made.
On March 12, 1987, the Commission filed its findings of fact, conclusions of law and recommendation that Judge Byrd receive a public reprimand. The Commission found that Judge Byrd did:
1. During the year 1981, while practicing as an attorney-at-law, pledge and deliver as collateral for a personal loan of $15,000 to the Flagship Bank of Seminole a certificate of deposit in the sum of $30,000 which he possessed as trustee for Virginia Keiffer.
2. During the year 1982, while serving as attorney and personal representative of the Estate of Bessie Yeargin, pay real estate taxes due on property owned by him or his wife and him, in the sum of $1,443.17 out of the funds of said estate.
3. During the year 1982, while practicing as an attorney-at-law, deposit interest in the sum of $811.46 earned from a certificate of deposit owned by the *959 Bessie Yeargin Estate, into an invest ment account in which he had a proprietary interest.
4. During the year 1983, while serving as a Circuit Judge of Orange County, Florida, pledge the certificate of deposit in the sum of $30,000 which he possessed as trustee for Virginia Keiffer as collateral for a personal loan of $5,500 to the Flagship Bank of Seminole, out of which he deposited $5,000 to the Estate of Bessie Yeargin to pay for a shortfall on his part as personal representative of $5,000 in his final accounting.[2]
The Commission went on to conclude in pertinent part:
The evidence is not in dispute that Judge Byrd, while practicing as an attorney-at-law and on one occasion while serving as a Circuit Judge, violated the Code of Professional Responsibility and the Code of Judicial Conduct. His defense of “chaos” in his personal life during 1982 might well mitigate the real estate taxes mix-up and the interest deposit to the account in which he had a proprietary interest. However, the “chaos” did not relieve him of the responsibility to make restitution of the real estate taxes he owed to the Yeargin Estate immediately after discovering this erroneous payment in late 1982.
Of great concern to this Commission is the initial pledging in 1981 by Attorney Byrd of the $30,000 certificate of deposit he held as trustee for Virginia Keiffer, as collateral for a personal loan of $15,-000, and when as a Circuit Judge in 1983, he pledged, at least indirectly, the same certificate of deposit for a personal loan of $5,500.
Although there was no ultimate financial loss to a client, nor any complaint by a client, it is undisputed that Attorney Byrd incompetently handled the affairs of his clients. To say the least, he was careless and imprudent in representing his clients, Virginia Keiffer and Bessie Yeargin.
In making its recommendation the Commission considered Judge Byrd’s candor and cooperation during the investigation and hearing together with the complimentary testimony of several witnesses called by him at the hearing. The Commission also took note of the fact that Judge Byrd has previously received a public reprimand from this Court for “promotpng], adver-tispng], and conductpng] gambling with respect to the [Jack Byrd Memorial] golf tournament.” Inquiry Concerning a Judge, James S. Byrd, 460 So.2d 377 (Fla. 1984). The Commission noted that because the operative facts involved in this case occurred long before the gambling incident, “we are not confronted with a question of inappropriate actions occurring after a reprimand.” With these factors in mind, the Commission concluded that “Judge Byrd’s two appearances before the Florida Judicial Qualifications Commission have been and will be beneficial to him in continuing to perform the duties of a Circuit Judge and that he will fully comply with the Code of Judicial Conduct in the future.” In light of this conclusion, the Commission recommends that Judge Byrd receive a public reprimand from this Court. Judge Byrd does not oppose this recommendation. Therefore, we approve the Commission’s findings of fact, conclusions of law and recommendation of discipline.
Accordingly, we hereby publicly reprimand Judge James S. Byrd.
It is so ordered.
OVERTON, Acting C.J., and EHRLICH, SHAW, BARKETT and KOGAN, JJ., concur.

 Although Judge Byrd could not remember pledging this certificate of deposit, by his additional answer he admitted that the Flagship Bank of Seminole held the certificate of deposit in its possession from on or about November 3, 1981 until approximately May 20, 1984. It is likely that this second "pledge” resulted only from the cross-collateralization previous of the security agreement or note evidencing the original $15,000 loan.